* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. Plaintiff is Ms. Angela L. Clark.
2. Defendant-employer is Corning Glass, Incorporated.
3. On September 5, 2001, the alleged date of injury, an employer-employee relationship exited between defendant-employer and plaintiff-employee. Defendant-employer *Page 2 
regularly employed three (3) or more employees. All parties were subject to and bound by the provisions of the Workers' Compensation Act. The Travelers Insurance Company insured defendant-employer.
4. All parties have been correctly designated and there is no question as to the misjoinder or non-joinder of parties.
5. Plaintiff's claim is for an injury by accident to her neck, shoulders and back arising out of and in the course of her employment with employer which occurred on or about September 5, 2001. Defendants admit liability for plaintiff's neck and left shoulder injuries on September 5, 2001. Defendants dispute plaintiff's claim for injuries to her low back or any other part of her body on September 5, 2001.
6. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of Plaintiff's Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3).
 c. Plaintiff's Employment File, which was admitted into the record, and marked as Stipulated Exhibit (4), and;
 d. A Packet of Discovery Documents, which was admitted into the record, and marked as Stipulated Exhibit (5).
7. The issues to be determined are as follows:
 a. whether plaintiff entitled to compensation for injury to her neck;
 b. whether plaintiff entitled to compensation for injury to her shoulders;
 c. whether plaintiff entitled to compensation for injury to her back; *Page 3 
 d. what is plaintiff's correct average weekly wage;
 e. to what additional benefits, if any, is plaintiff entitled to receive for her injuries;
 f. whether and to what extent is plaintiff entitled to additional medical and disability compensation as a result of her September 5, 2001 injury, and;
 g. whether plaintiff's current alleged low back condition is related to her September 5, 2001 injury.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty (40) years of age, with her date of birth being October 4, 1964. Plaintiff is a high school graduate and at the time of the hearing before the deputy commissioner was attending Fayetteville State University on a part-time basis.
2. Plaintiff began her employment with defendant-employer on September 23, 1985. Plaintiff initially worked as a waveguide operative and a blankmaking associate. The blankmaking job results in the production of fiber and involves two steps, the blowing of soot onto a cane or rod of glass and then the baking the blank to produce high purity glass.
3. On September 5, 2001, plaintiff was injured when a soot case detached from a monorail, fell on her, knocking her to the floor and into another machine. Plaintiff's body hit the other machine in her left trapezial region, the area between her neck and left shoulder. *Page 4 
4. Prior to her September 5, 2001 injury, plaintiff had a significant and lengthy history of back problems. On May 9, 2000, plaintiff went to Cape Fear Hospital and reported a history of chronic back pain. On May 10, 2000, plaintiff sought treatment from Dr. Charles L. Nance, of Wilmington Orthopaedic Group, at which time she reported experiencing low thoracic back pain. Dr. Nance's medical records reflect that plaintiff had injured her upper back lifting a weight at work on March 7, 2000.
5. On January 4, 2001, plaintiff returned to Cape Fear Hospital, again with reports of back pain in the middle of her shoulders down into her lower back. On that date, Dr. Michael R. Osborne diagnosed plaintiff as having chronic back pain, noting that her back pain began in 1998 after a fall. Dr. Osborne also noted that plaintiff had re-injured her back in 1999. On January 31, 2001, plaintiff returned to the Wilmington Orthopaedic Group, and was treated by Dr Mark D. Foster. Plaintiff reported to Dr. Foster that she had fallen at work on May 13, 1999, but that her pain had not surfaced until approximately a year later. Dr. Foster diagnosed plaintiff as having bilateral myositis. Dr. Foster did not recommend additional medical care for plaintiff, and assigned her a zero percent permanent partial disability rating. On July 9, 2001, plaintiff reported experiencing mid and low back pain to Dr. Samuel B. Collins. Plaintiff also reported to Dr. Collins that she experienced chronic low back pain as a result of an injury at her workplace that had occurred more than a year prior.
6. On August 3, 2001, plaintiff returned to Dr. Foster for additional treatment for her thoracic back pain. On this date, plaintiff reported experiencing persistent upper thoracic back pain. Based upon his examination, Dr. Foster diagnosed plaintiff as having chronic thoracic spine pain. Additionally, Dr. Foster released plaintiff to return to work without restrictions and without an impairment rating. *Page 5 
7. Following her September 5, 2001 injury by accident, plaintiff sought treatment at Medac, and was examined by Dan Shapiro, PA-C. Plaintiff was prescribed medication for her pain, and released to return to sedentary work. On September 17, 2001, plaintiff returned to Medac, at which time P.A. Shapiro released her to return to work with a fifteen (15) pound lifting restriction.
8. On September 27, 2001, plaintiff returned to Cape Fear Hospital, at which time she reported experiencing left-sided back pain from her neck into her lower back.
9. On October 1, 2001, Mr. Shapiro released plaintiff to return to work with a fifteen (15) pound lifting restriction and referred her to Dr. William Sutton, at the Wilmington Orthopaedic Group. At her initial examination, plaintiff reported to Dr. Sutton that she had injured her shoulder, back and neck after she fell backwards at work. Plaintiff also reported that she hit her upper left trapezial area during this incident. Dr. Sutton diagnosed plaintiff as having a left shoulder contusion, and did not recommend any additional orthopaedic diagnostics. Additionally, Dr. Sutton recommended that plaintiff return to full duty work in ten days.
10. On October 9, 2001, defendants filed an Industrial Commission Form 19 Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission, which stated that plaintiff sustained a left shoulder contusion injury on September 5, 2001. Defendants accepted plaintiff's claim for medical treatment only as a result of her left shoulder injury because plaintiff missed no time from work as a result of her September 5, 2001 injury until a general layoff occurred on October 27, 2001.
11. On February 4, 2002, plaintiff returned to work full duty for defendant-employer as a fiber process associate (I). Plaintiff then worked continuously until October 2004. Prior to that date, the credible evidence of record is that plaintiff never reported to her supervisor, Mr. *Page 6 
Eric Lindstrom, that she could not work after her injury. Additionally, plaintiff met her work expectations and requested no accommodations.
12. On July 23, 2002, plaintiff completed an Industrial Commission Form 18 Notice of Accident to Employer, on which she contended that she injured her left shoulder, upper back, left arm, and neck on September 5, 2001. Plaintiff never made a claim for a low back injury as a result of her September 5, 2001 fall in which she struck her left shoulder area on a machine.
13. On October 11, 2002, plaintiff returned to Dr. Sutton's office and was examined by Mr. Ryan C. Murphy, P.A. Thereafter, plaintiff was referred to Dr. Aaron R. Twigg, M.D, as Dr. Sutton opined that he did not have any further orthopaedic treatment for plaintiff at that time.
14. On December 10, 2002, Dr. Twigg examined plaintiff, and noted that she had struck her left shoulder and neck on a lathe on September 5, 2001. To Dr. Twigg, plaintiff only reported left shoulder and neck pain. Dr. Twigg diagnosed plaintiff as having a cervical myofascial pain syndrome, and recommended physical therapy and medications. However, Dr. Twigg did not recommend any additional testing for plaintiff and he released her to return to work without restrictions.
15. On March 17, 2003, plaintiff returned to Dr. Twigg, who noted that her back pain did not seem to be part of her workplace injury as he understood it, and therefore, was not specifically addressed, separately from her shoulder condition. Also at that time, Dr. Twigg released plaintiff to return to her blankmaking associate job and assigned a zero percent permanent partial disability rating to her left shoulder.
16. On November 3, 2003, plaintiff returned to Dr. Sutton. Following an examination, Dr. Sutton released plaintiff from his care to return as needed and released her to *Page 7 
work without restrictions. Additionally, Dr. Sutton has expressed agreement with Dr. Twigg's zero percent left shoulder rating.
17. On February 27, 2004, Dr. Jack W. Bowling, Jr., evaluated plaintiff for lumbar spine pain. Plaintiff reported to Dr. Bowling that her low back injury had occurred in 2000. An MRI ordered by Dr. Bowling produced a normal result. Dr. Bowling released plaintiff to return to work without restrictions and declined to assign her any permanent partial disability rating.
18. On May 11, 2004, plaintiff was involved in a motor vehicle accident when another vehicle struck her car from behind while she was stopped. After the accident, plaintiff reported to Coastal Chiropractic Center, P.A. in Wilmington. Plaintiff has admitted that she reported to Philip A. Van Campen, D.C. that she had not experienced pain prior to the motor vehicle accident, but did experience significant back and other pain after its occurrence.
19. Plaintiff, on her own initiative, began treatment with Dr. John Boldizar on August 12, 2004, and was diagnosed with lower back pain and myofascial pain syndrome. Upon referral of Dr. Boldizar, plaintiff was evaluated by neurologist Dr. Daniel Tesfaye on November 30, 2004 where her physical condition was unremarkable.
20. The testimony of Drs. Sutton and Twigg, plaintiff's treating physicians, are given greater weight then the testimony of Drs. Boldizar and Tesfaye. The testimony of Drs. Boldizar and Tesfaye are given little weight as they are based solely on plaintiff's subjective complaints of pain.
21. Dr. Sutton testified that upon examination of plaintiff on October 2, 2001, he thoroughly evaluated plaintiff's complaints, which did not include a low back problem and a low back problem was not diagnosed. Dr. Sutton opined that plaintiff did not sustain a low back *Page 8 
injury on September 5, 2001, and further testified that he was unaware that defendants were denying plaintiff treatment for her low back.
22. Based upon the totality of the credible evidence of record, plaintiff did not injure or aggravate her low back on September 5, 2001. Accordingly, plaintiff's low back condition is unrelated to her September 5, 2001 injury by accident.
23. As the result her September 5, 2001 injury by accident, plaintiff did not sustain any period of diminished wage earning capacity or disability, neither total nor permanent partial.
21. Based on the treatment recommendations of Drs. Sutton and Twigg, plaintiff's treating physicians, plaintiff is entitled to no additional medical treatment as a result of her September 5, 2001 left shoulder and neck injury.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 5, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of, and causally related to her September 5, 2001 injury by accident, plaintiff sustained injuries to her left shoulder and neck.Id. Plaintiff did not sustain an injury by accident or a specific traumatic incident to her low back as the result of her September 5, 2001 injury by accident. Id.
2. Plaintiff is not entitled to total disability or permanent partial disability compensation as the result of her September 5, 2001 injury by accident. N.C. Gen. Stat. §§ 97-29; 97-31.
3. Plaintiff is not entitled to any additional medical treatment as a result of her *Page 9 
September 5, 2001 injury by accident. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional medical and disability compensation as a result of her September 5, 2001 left shoulder and neck injuries is hereby DENIED.
2. Plaintiff's claim for medical and disability compensation as a result of her alleged September 5, 2001 low back injury is hereby DENIED.
3. Each side shall bear its own costs.
This the 31st day of March 2006
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ BUCK LATTIMORE, COMMISSIONER.
 S/______________ THOMAS J. BOLCH, COMMISSIONER.